UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ANDRE LEE COLEMAN,

        Plaintiff,         Case No. 2:09-cv-178

v.         Honorable R. Allan Edgar

BRIAN SWEENEY et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Discussion

I.  Factual allegations

Plaintiff currently is incarcerated at Baraga Maximum Correctional Facility (AMF). In his *pro se* complaint, he sues Michigan Department of Corrections Deputy Director of Administration and Programs Barry McLemore and the following AMF employees: Assistant Warden Ralph Napel, Retired Assistant Deputy William Leutzow, Administrative Assistant Janice Ansell, Assistant Resident Unit Manager (ARUS) Brian Sweeney, Resident Unit Managers (RUM) Ralph Sackett and Kimberly Meni.

Plaintiff alleges that on December 15, 2005, the Clerk's office of the Ingham County Circuit Court returned to Plaintiff a money order and request for rehearing because the money order for the initial partial filing fee was made payable to the "State of Michigan" instead of the "30th Circuit Court." (Compl. at 9, docket #1.) On December 22, 2005, Plaintiff received delivery of the legal mail, but the money order was removed and Plaintiff was given a contraband removal receipt. (*Id.* at 10.) Plaintiff alleges that this removal was in violation of MICH. DEP'T. OF CORR., Policy Directive 04.02.105. (*Id.*) On December 27, 2005, Plaintiff received delivery of the return of two additional pleadings filed with the Ingham County Circuit Court with money orders made payable to "State of Michigan." Those money orders were also removed and Plaintiff was given the legal mail and a contraband removal receipt for the money orders. (*Id.* at 11.)

Plaintiff alleges that he had twenty-one days to return the initial partial filing fees to the Ingham County Circuit Court. (*Id.* at 12-13.) He states that Defendants Sackett and Sweeney were made aware of the time limitation, but did not deposit the funds into his account because the money orders were not made payable to Plaintiff. On January 12, 2006, Plaintiff filed a "flash kite"

and was interviewed by Defendant Leutzow. (*Id.* at 13.) On January 20, 2006, Petitioner filed a second flash kite because he had not yet received the funds. (*Id.* at 13-14.) On January 25, 2006, Defendant Napel answered Plaintiff's kite informing him that Defendant Sweeney would hold a hearing the next day. (*Id.* at 14.) Plaintiff received a hearing on January 26, 2006. He alleges that Defendant Sweeney retaliated against him for use of the "flash kite system" by having the hearing in order to delay Plaintiff's attempts to have the money orders returned. (*Id.* at 14-15.) Plaintiff received that results of the administrative hearing on January 30, 2006, after writing to Defendant Leutzow. (*Id.* at 15.)

On February 6, 2006, Plaintiff initiated two separate grievances. The first was against Defendants Sweeney, Sackett and the mail room supervisor. (*Id.*) He was interviewed by Defendant Meni. On March 1, 2006, Plaintiff received a response finding that the legal mail was properly handled. (*Id.* at 15-16.) Defendant Leutzow signed and approved this response. Defendant Sackett answered the second grievance against Defendant Sweeney stating that the money orders were handled properly and that there was no violation of Plaintiff's due process rights. (*Id.* 16-17.) Defendant Leutzow signed and approved both the responses.

Plaintiff appealed both responses. He appealed the first grievance on March 6, 2006, but Defendant Ansell stated that she did not receive it until April 3, 2006. Plaintiff appealed the other grievance on March 17, 2006, though Defendant Ansell claimed that she did not receive it until April 13, 2006. Defendant McLemore rejected both his appeals on April 19, 2006. (*Id.* at 17-18; Ex. at 15, 16.)

Plaintiff asserts that MICH. DEP'T. OF CORR., Policy Directive 04.05.105 § I requires Defendant Napel to have returned the money orders to Ingham County Circuit Court with an explanation of why they were returned. (*Id.* at 19.)

Plaintiff raises nine claims for relief. First, Defendants Sweeney and Sackett denied his access to the courts. (*Id.* at 20-21.) Second, Defendants Sweeney and Sackett retaliated against him for filing flash kites. Third, Defendant Sweeney retaliated against him by conducting an administrative hearing and, after being contacted by Defendant Napel, destroying the money orders. Fourth, Defendant Leutzow "silently condoned and encouraged" that action of Defendants Sweeney and Sackett. (*Id.* at 22.) Fifth, Defendants Leutzow and Meni's inactions and failure to follow policy directives denied Plaintiff's access to the courts. Sixth, Defendants Leutzow and Sackett denied his access to the court by denying his appeal of his grievances. (*Id.*) Seventh, Defendants Ansell and McLemore denied his access to the courts by not timely deciding his grievance appeals. (*Id.* at 23.) Eighth, Defendants Ansell and Napel knew of the actions of Defendants Sweeney and Sackett and did not return the money orders to Plaintiff. Ninth, Plaintiff was denied access to the Court by Defendants' "combined actions and inactions." (*Id.* at 23-24.)

For relief, Plaintiff requests a jury trial, compensatory and punitive damages, all court debts to be cleared from his account and a transfer to a Security Level II facility. (*Id.* at 24.)

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Access to the Court

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to

enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).

Further, in order to state a viable claim for interference with his access to the courts, a plaintiff must demonstrate "actual injury" to pending or contemplated litigation. *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

The Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Plaintiff alleges that the money orders for the initial partial filing fee in three cases were returned to him because they were made payable to the "State of Michigan" instead of the "30th Circuit Court." (Compl. at 9, 11.) He alleges that Defendant Sweeney, Sackett, Leutzow, Meni, Ansell and McLemore denied his access to the court by their actions related to the return of the money orders to Plaintiff. However, he does allege the nature of the underlying lawsuits or demonstrate that they asserted a non-frivolous legal claim. Additionally, he does not allege any actual injury. He does not claim that his cases were dismissed by the Ingham County Circuit Court.[1] Therefore, Plaintiff has failed to state cognizable claim for denial of access to the courts.

---

[1] Plaintiff does claim that he received "the summary judgment" in a case filed in this Court, *Coleman v. Bowerman*, No. 2:09-cv-24 (W.D. Mich. 2009). (Compl. at 20.) He appears to be referring to a motion for summary judgment filed by that Defendant in that case on July 30, 2009. The motion is currently pending and the case is still open.

### B. Retaliation

Plaintiff alleges that Defendants Sweeney and Sackett retaliated against him for filing flash kites by conducting "an unnecessary, unwarranted informal administrative hearing" to delay the return of the money orders to Plaintiff when they knew of the time limitations set by the state court to pay the initial partial filing fee. (Compl. at 21.) Plaintiff also alleges that Defendant Sweeney retaliated against him by conducting an administrative hearing and, after being contacted by Defendant Napel, destroying the money orders.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).

The filing of grievances is constitutionally-protected conduct for which a prisoner cannot be subjected to retaliation. *Shehee*, 1999 WL 1029294, at *4. However, Plaintiff cannot

show that an adverse action motivated by the filing of the grievance was taken against him. He received a hearing after each of the grievances he filed. Plaintiff simply cannot show that having an Administrative Hearing to address his grievances could deter a prisoner from filing grievances. To the contrary, a hearing provides an opportunity for the prisoner to seek redress. The hearing does not become retaliatory in nature simply because the hearing officer fails to find in favor of the prisoner.

Nor can Plaintiff claim that there was a delay in receiving hearings regarding the flash kites he filed. According to his complaint, Plaintiff filed the first "flash kite" on January 12, 2006 and was interviewed the same day. (Compl. at 23.) Over a week later, Plaintiff filed a second flash kite on January 20, 2006. Five days later Defendant Napel told Plaintiff that he would have a hearing the next day. Plaintiff had a hearing on January 26 and received the hearing report on January 30, 2006. (*Id.* at 13-15.) For all those reasons, Plaintiff fails to state a claim for retaliation.

### C. Respondeat Superior

Plaintiff claims that Defendant Leutzow "silently condoned and encouraged" the actions of Defendants Sweeney and Sackett. (Compl. at 22.) He also claims that Defendants Leutzow and Sackett denied his access to the court by denying his appeal of his grievances. (*Id.*) He alleges that Defendants Ansell and McLemore denied his access to the courts by not timely deciding his grievance appeals. (*Id.* at 23.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based

upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff's claim that Defendant Leutzow "silently condoned and encouraged" the actions of Defendants Sweeney and Sackett is merely conclusory and is insufficient to demonstrate that Defendant Leutzow engaged in any active unconstitutional behavior. (Compl. at 22.)

Moreover, Defendants Leutzow, Sackett, Ansell and McLemore may not be held liable under § 1983 merely because they denied Plaintiff's grievances or grievance appeals. *Shehee*, 199 F.3d at 300 (defendants could not be held liable for plaintiff's termination from his commissary job when their only roles in the action involved the denial of administrative grievances or the failure to act). Accordingly, Defendants Leutzow, Sackett, Ansell and McLemore must be dismissed.

### D. Violation of Policy Directive

Defendants Leutzow, Meni, Ansell and Napel's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr.

21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     10/8/09            /s/ R. Allan Edgar
                              R. Allan Edgar
                              United States District Judge